**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| In re: )<br>Building Materials Corporation of America )<br>Asphalt Roofing Shingle Products Liability )<br>Litigation, )<br>_____ )<br> )<br>Angela Posey, individually and )<br>on behalf of all others similarly situated, )<br> )<br>                Plaintiff, )<br> )<br>            vs. )<br> )<br>Building Materials Corporation of America, )<br>dba GAF Materials Corporation, )<br> )<br>                Defendant. )<br>_____ ) | MDL No.: 8:11-mn-02000-JMC<br><br><br><br><br><br><br><br>Civil Action No.: 3:11-cv-02784-JMC<br><br><br>**ORDER AND OPINION** |

This matter is before the court on Defendant Building Materials Corporation of America, doing business as GAF Materials Corporation's ("GAF"), Motion to Dismiss the First Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted [Dkt. No. 22]. Extensive memoranda in support of and in opposition to the motion have been filed by the parties. Having considered the written arguments of the parties and the record before the court, GAF's motion is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

GAF is a Delaware corporation with its principal place of business in Wayne, New Jersey. It manufactures roofing materials, including asphalt roofing shingles marketed under the Timberline® brand name, in facilities located across the United States and sells these shingles nationwide. Plaintiff Angela Posey ("Posey") is a resident of Lugoff, South Carolina, who

1

alleges that that her home is roofed with defective Timberline shingles. Pursuant to Posey's Amended Complaint, the shingles were purchased in or around June 1999. In purchasing the shingles, Posey contends that she relied on certain representations made by GAF and its agents including, but not limited to, promotional statements marketing the shingles as having superior durability qualities and expressly warranting on the shingle packaging that the product complied with ASTM International ("ASTM") industrial standard D3462. She further alleges that the shingles installed on her roof were manufactured and sold to her with a latent defect that causes the shingles to prematurely crack, of which GAF was aware but intentionally failed to disclose to Posey and other consumers. Posey brings this putative class action against GAF asserting claims for breach of express and implied warranties (counts I and II); negligence and negligent failure to instruct or warn (counts III and IV); violation of the New Jersey Consumer Fraud Act ("NJCFA") (count V); violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") (count VI); fraudulent concealment/equitable tolling (count VIII); and declaratory and injunctive relief (count VII) arising from GAF's sale of the allegedly defective roofing shingles.

## LEGAL STANDARD

**Standard of Review**

To survive a motion to dismiss, the Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)), in order to "give the defendant fair notice . . . of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal citations omitted).

Stated otherwise, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In evaluating a motion to dismiss, a plaintiff's well-pled allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[1] Although the court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to

---

[1] A court may consider documents attached to a motion to dismiss if such documents are integral to and explicitly relied on by the plaintiff in the complaint, provided that the plaintiff does not dispute the authenticity of the documents. *See Beasley v. Arcapita, Inc.*, 436 F. App'x. 264 (4th Cir. 2011) (acknowledging that a court may consider documents attached to a motion to dismiss if such documents are integral to and explicitly relied on by the plaintiff in the complaint, provided that the plaintiff does not dispute the documents' authenticity); *but see Braun v. Maynard*, 652 F.3d 557 (4th Cir. 2011) (noting that, on motion to dismiss, the court should not consider a document not relied upon expressly by the plaintiff in the complaint). Upon review of the Amended Complaint, it appears that Posey expressly references the filing of her warranty claim and the Smart Choice Warranty in partial support for her claims. *See* First Amended Complaint, ¶¶ 110-14 [Dkt. No. 19]. Accordingly, the court finds that it may consider the warranty claim in assessing GAF's motion.

relief." *Iqbal*, 556 U.S. at 679.

**Choice of Law**

"This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law. For diversity cases that are transferred in a [multi-district litigation], the law of the transferor district follows the case to the transferee district." *In re MI Windows and Doors, Inc. Products Liability Litigation*, Nos. 2:12–mn–00001, 2:12–cv–01256–DCN, 2012 WL 4846987, at *1 (D.S.C. Oct. 11, 2012) (citing *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010) and *Manual for Complex Litigation Fourth* § 20.132). This case was originally filed in the United States District Court for the District of New Jersey. Therefore, New Jersey's choice of law rules apply in this case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (per curiam); *Gen. Star Nat'l Ins. Co. v. Liberty Mutual Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992).

The court may appropriately undertake a choice of law analysis at the motion to dismiss stage where the factual record is sufficiently developed to facilitate the resolution of the issue. *See Snyder v. Farnam Cos.,* 792 F. Supp. 2d 712, 718 (D.N.J. 2011) ("In order to decide whether choice of law analysis is appropriate at the motion to dismiss stage in this particular case, the Court will follow the guidance provided in *Harper*, and determine whether the choice of law issues 'require a full factual record' or not.") (citing *Harper v. LG Elecs. United States, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009)). If the choice of law analysis requires the determination of purely legal issues or if the complaint provides the relevant factual information for the court's evaluation of the relevant factors, the court may properly make a choice of law determination. *See Montich*, 849 F. Supp. 2d at 445 ("whether a conflict exists between the laws of the two

jurisdictions — demands a purely legal analysis and requires no factual record."); and *id.* at 448 (noting that the plaintiff's complaint included "sufficient facts from which this Court can determine which law should apply" to the claims).

Posey has essentially conceded the applicability of South Carolina law in all claims except the NJCFA claim as she primarily relies on law from the United States Court of Appeals for the Fourth Circuit, the United States District Court in South Carolina, and South Carolina state law throughout her response memorandum and only challenges the choice of law issue as it applies to the NJCFA claim. Accordingly, the court will focus its analysis of the choice of law issue on the NJCFA claim.

## DISCUSSION

**Timeliness of Legal Action – Statute of Repose**

GAF asserts that Posey's claims based on warranty, negligence, and fraud theories are all barred by South Carolina's eight-year statute of repose applicable to improvements to real property. *See* S. C. Code Ann. § 15-3-640. Posey refutes GAF's position, contending that GAF waived its statute of repose defense by issuing an express warranty extending coverage for the shingles far beyond the statutory limit. Posey further asserts that the statute of repose should be either equitably tolled or waived given GAF's affirmative acts of concealment that prevented Posey from learning about her potential causes of action. *See* Plaintiffs' Omnibus Opposition to GAF's Motion to Dismiss Based on Warranty and Repose Arguments ("Plaintiffs' Omnibus Memorandum") [MDL No. 8:11-mn-02000-JMC, Dkt. No. 71].

Unlike a statute of limitations, which is "'a procedural device that operates as a defense to limit the remedy available from an existing cause of action[,] . . . [a] statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined

5

period of time.'" *Langley v. Pierce*, 313 S.C. 401, 403-04, 438 S.E.2d 242, 243 (1993) (quoting *Goad v. Celotex Corp.,* 831 F.2d 508, 511 (4th Cir. 1987), *cert. denied,* 487 U.S. 1218 (1988)). The statute of repose creates "'an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body.'" *Id*. (quoting *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989)).

> The statute of repose applicable to this case provides that
>
> [n]o actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than eight years after substantial completion of the improvement. For purposes of [the] section, an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes: . . . (5) an action in contract or in tort or otherwise; . . . (9) an action against owners or manufacturers of components . . .

S.C. Code Ann. § 15-3-640 (2005). Section 15-3-640 explicitly extends to liability actions against "manufacturers of components" used when making improvements to real property. *Id*; s*ee also, e.g*., *Broome v. Truluck*, 270 S.C. 227, 229, 241 S.E.2d 739, 740 (1978) (applying the statute of repose to a garage door); *Ocean Winds Corp. of Johns Island v. Lane*, 347 S.C. 416, 421, 556 S.E.2d 377, 380 (2001) (applying the statute of repose to windows).

Section 15-3-640 further states that "[n]othing in this section prohibits a person from entering into a contractual agreement prior to the substantial completion of the improvement which extends any guarantee of a structure or component being free from defective or unsafe conditions beyond eight years after substantial completion of the improvement or component." S.C. Code Ann. § 15-3-640. Additionally, the limitations set out in § 15-3-640 "are not available as a defense to a person guilty of fraud, gross negligence, or recklessness in providing

6

components in furnishing materials . . . or to a person who conceals any such cause of action." S.C. Code Ann. § 15-3-670.[2]

Here, Posey installed GAF shingles on her house in 1999. She filed this complaint in August 2011, well beyond the eight-year statute of repose. However, based on the language of § 15-3-640, the court finds that Posey's Amended Complaint adequately alleges that GAF contractually extended the statute of repose by making express warranties and issuing the Smart Choice Shingle Limited Warranty ("Smart Choice Warranty") [Dkt. No. 22-8].[3] Therefore, the court denies GAF's request to dismiss Posey's breach of warranty claims based on the statute of repose.

Further, Posey has alleged that GAF's representations concerning the ASTM certifications affixed to the product packaging and the warranted lifespan of the shingles were intended to fraudulently conceal the causes of action available to Posey and the members of the putative class despite GAF's alleged knowledge that such representations were false. *See*

---

[2] Posey argues that equitable tolling is applicable in her case without citation to authority in this jurisdiction. South Carolina courts have not addressed whether the statute of repose contained in § 15-3-640 is subject to equitable tolling. However, the South Carolina Supreme Court has previously found that equitable tolling of a statute of repose for medical malpractice suits was not available, even though the court had previously upheld tolling in similar situations involving statutes of limitations. *Langley*, 313 S.C. at 405, 438 S.E.2d at 244. In *Langley*, the court placed great emphasis on the legislature's intent to create a substantive, rather than procedural right, which explicitly placed an "outer limit beyond which" the claim would be barred. *Id*. (citations omitted). The court has recognized that "[s]tatutes of repose by their nature impose on some plaintiffs the hardship of having a claim extinguished before it is discovered, or perhaps before it even exists." *Capco of Summerville, Inc. v. J.H. Gayle Const. Co., Inc.*, 368 S.C. 137, 142, 628 S.E.2d 38, 41 (2006). Nevertheless, the court has not extended the principles of equitable tolling to claims otherwise barred by statutes of repose. Notwithstanding South Carolina's jurisprudence as to the application of equitable tolling under these circumstances, this court recognizes the statutory limitations on the assertion of the statute of repose as a defense where fraudulent conduct is alleged.

[3] The GAF Smart Choice Warranty is attached as Exhibit B to the Affidavit of Linda Marion submitted by GAF in support of its motion. Posey has not disputed the authenticity of the document and has expressly relied upon the warranty in her Amended Complaint.

7

*generally,* Amended Complaint. Posey further alleges that, due to the latent nature of the alleged defect, she had no reasonable method of discovering her cause of action until the product began to manifest an issue which would have prompted some manner of inquiry as to the source of the problem. *Id*. Because § 15-3-670 renders the statute of repose defense unavailable to those who have fraudulently concealed a plaintiff's cause of action, the court denies GAF's request to dismiss Posey's negligence and fraud claims on the basis of the statute of repose.

**Actual Injury**

GAF contends that Posey's warranty and fraudulent concealment claims must be dismissed because Posey has failed to allege any "actual injury to person or property." Specifically, GAF argues that Timberline shingles installed on Posey's home are adequately performing as roofing material and that Posey has received exactly what she bargained for – roofing shingles that do not leak. In response, Posey notes that GAF ignores the allegations of the Amended Complaint regarding actual cracking, splitting, and tearing exhibited in her roofing shingles, and further argues that these allegations sufficiently aver actual injury.

Under South Carolina law, purchasers of an allegedly defective product have no legally cognizable claim unless and until the defect manifests itself. *Wilson v. Style Crest Prods., Inc.*, 367 S.C. 653, 657-58, 627 S.E.2d 733, 736-37 (2006) (purchasers of an allegedly defective mobile home anchor system could not recover on warranty or tort claims without a showing "that the product delivered was not, in fact, what was promised.").

Liberally construing the Amended Complaint in favor of Posey, as the court must at the motion to dismiss stage of the litigation, GAF's objections to the sufficiency of Posey's allegations regarding "actual injury" are misplaced. Posey's Amended Complaint contains multiple allegations of injuries concerning GAF's marketing and selling of shingles that

8

purportedly fail to comply with ASTM D3462 and certain building code provisions, resulting in cracking and tearing contrary to the purported representations of the product quality. Accordingly, the court finds GAF's claims that Posey has failed to allege "actual injury" to be an inadequate basis upon which to grant its motion.

**Economic Loss Doctrine**

GAF contends that Posey's tort claims are barred by South Carolina's economic loss rule and, therefore, the court should dismiss these causes of action.

Under South Carolina law, "tort liability only lies where there is damage done to other property or personal injury." *Sapp v. Ford Motor Co.,* 386 S.C. 143, 147, 687 S.E.2d 47, 49 (2009).

> In the context of products liability law, when a defective product only damages itself, the only concrete and measurable damages are the diminution in the value of the product, cost of repair, and consequential damages resulting from the product's failure. Stated differently, the consumer has only suffered an economic loss. The consumer has purchased an inferior product, his expectations have not been met, and he has lost the benefit of the bargain. . . . Accordingly, where a product damages only itself, tort law provides no remedy and the action lies in contract; but when personal injury or other property damage occurs, a tort remedy may be appropriate.

*Id*.

GAF vigorously contends that Posey has not alleged any damages related to the purported defect associated with the ASTM representation. First, GAF notes that Posey fails to allege anywhere in the Amended Complaint any specific damage to property other than the shingles on her roof. In support of its argument, GAF directs the court to several allegations in the Amended Complaint where Posey alleges in a conclusory manner, without any factual support, that she has a "real and present injury in that she owns a home with substandard and damaged shingles that do not comply with ASTM D3462," and that the damage "includes the

9

cost to replace the shingles to become code compliant and to avoid further damage to other parts of the structure," as well as "the cost of repairing the damage to . . . other property that was caused by GAF's sale of defective shingles." Amended Complaint, at ¶134. Other allegations in the Amended Complaint generally refer to "damage to property other than the GAF shingles" without any indication as to what that damage may be. *Id.* at ¶ 135. Additionally, in her warranty claim, Posey notably indicated that her roof exhibited no leaking at the time of the submission of her claim.

Other than conclusory statements concerning speculative and hypothetical damage to Posey's property and that of the putative class members, the court finds that Posey has failed to sufficiently allege any damage to "other property." Additionally, it is undisputed that this case does not involve any allegations of personal injury. Without any allegation of actual injury to property other than the defective product itself and the consequential damages resulting from the replacement of the defective product, Posey has presented the court with tort actions merely sounding in negligence which fall squarely within the parameters of those actions barred by South Carolina law. Accordingly, the tort claims must be dismissed.

**Warranty Disclaimer**

GAF contends that Posey's warranty claims are barred as a matter of law because GAF effectively disclaimed all express and implied warranties as set forth in GAF's Smart Choice Warranty.

South Carolina statutory law allows for the exclusion or modification of warranties. South Carolina statutory law provides, in part,

> (1) If the agreement creates an express warranty words disclaiming it are inoperative.
>
> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case

of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude the implied warranty of merchantability or of fitness for a particular purpose must be specific, and if the inclusion of such language creates an ambiguity in the contract as a whole it shall be resolved against the seller.

(3) Notwithstanding subsection (2): (a) unless the circumstances indicate otherwise, all implied warranties are excluded by specific language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty . . .

S.C. Code Ann. § 36-2-316

In her Amended Complaint, Posey specifically alleges that she and the installing contractor, "when purchasing GAF Timberline shingles, . . . relied on the accuracy of the designations affixed to the shingles and their packaging." Amended Complaint, at ¶ 120. As represented by Linda Marion, the GAF Smart Choice Warranty [Dkt. No. 22-8] was also affixed to every package of GAF shingles. The Smart Choice Warranty explicitly limits coverage and provides for a "**Sole and Exclusive Warranty**" that is "EXCLUSIVE AND REPLACES ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE." *Id.* (emphasis in original).

Upon review of the disclaimer in the Smart Choice Warranty document that GAF contends was affixed to the packaging of the shingles, which Posey does not dispute, the court finds that the disclaimer complies with the statute allowing exclusion or modification of implied warranties. Specifically, the disclaimer appears in all capital letters directly below a heading captioned in bold type. Indeed, Posey does not even refute GAF's argument that the disclaimer complies with the statutory requirements. Instead, Posey argues that GAF's disclaimer and efforts to limit its express warranties fail because the Smart Choice Warranty is unconscionable.

11

Incorporating the arguments from Plaintiffs' Omnibus Opposition to GAF's Motion to Dismiss Based on Warranty and Repose Arguments [MDL No. 8:11-mn-02000-JMC, Dkt. No. 71],[4] Posey contends that the warranty disclaimers and remedial limitations found in GAF's Smart Choice Warranty are unconscionable and unenforceable against her and members of the purported class because GAF knew of the alleged defects in the shingles when it sold them and concealed the defects from consumers to induce sales and avoid its obligations under its warranty.

"In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 24-25, 644 S.E.2d 663, 668 (2007). "Absence of meaningful choice on the part of one party generally speaks to the fundamental fairness of the bargaining process in the contract at issue." *Id* at 25, 644 S.E.2d at 669 (2007).

In the Amended Complaint, Posey makes various allegations concerning the unfairness and unreasonableness of certain provisions contained in the warranty claim form, which Posey further alleges was not part of the Smart Choice Warranty attached to the shingle packaging. *See* Amended Complaint ¶¶108-114. Throughout the Amended Complaint, Posey additionally alleges that GAF possessed superior knowledge concerning the condition of the shingles, which Posey and the purported class members did not possess, thereby placing them in a significantly inferior bargaining position at the time of the purchase. *See generally* Amended Complaint.

---

[4] GAF generally complains that Posey's reliance on Plaintiffs' Omnibus Opposition to GAF's Motion to Dismiss Based on Warranty and Repose Arguments violates certain page limitations established by this court's Local Civil Rules. However, GAF has not suggested or requested any action from this court for the alleged violation of the Local Civil Rules.

12

Based on the allegations of the Amended Complaint, the court finds that Posey has sufficiently alleged that the warranty disclaimer was unconscionable or unenforceable. Therefore, the court denies GAF's request to dismiss Posey's warranty claims on this basis.

**Sufficiency of Fraud Allegations Under Federal Rule of Civil Procedure 9**

GAF seeks dismissal of all claims contained in Posey's Amended Complaint which are based on allegations of fraudulent conduct.

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Fourth Circuit has indicated that Rule 9 serves several integral purposes.

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of .... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks and citations omitted). "Under the heightened pleading standard applicable to fraud claims under Fed.R.Civ.P. 9(b), [the complaint] must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (internal quotation marks and citations omitted).

Upon review of the Amended Complaint, the court finds that the majority of Posey's claims of fraudulent conduct do not meet the heightened standard of Rule 9(b). Although Posey's Amended Complaint contains copious allegations concerning GAF's advertising, marketing, and fraudulent concealment of information, Posey fails to specify the time, place, or

13

manner of these alleged fraudulent activities. In fact, Posey's Amended Complaint predominantly rests on broad assertions regarding GAF's conduct in other litigation. Posey's allegations against GAF regarding its alleged statements in brochures, on websites, in advertising, or in sales presentations fail the pleading standard of Rule 9(b) and cannot support Posey's fraud based causes of action.

However, Posey has not made any independent claim for common law fraud. Therefore, Posey need plead only one allegation of fraudulent conduct with sufficient particularity to survive dismissal, which the court finds that Posey has sufficiently provided here. Specifically, Posey claims that she and anyone purchasing the shingles on her behalf relied on the written representations regarding the ASTM standards and code compliance affixed to the shingles packaging purchased and installed on Posey's home in South Carolina in 1999. *See* Amended Complaint ¶¶ 117-120. Posey further alleges that GAF was aware of the falsity of this representation at the time of her purchase due to their involvement in prior litigation concerning the same or similar alleged defects that concluded in 1997 and reports of cracking problems in the late 1990's. These allegations meet the heightened Rule 9(b) pleading standard.[5] Therefore, the court will not dismiss Posey's fraud based claims to the extent they rest on her allegations concerning the representations affixed to the shingle packaging purchased and installed on this home.

**New Jersey Consumer Fraud Act**

GAF further argues that the court should dismiss Posey's NJCFA claim because she is not entitled to any relief under the statute. Specifically, GAF complains that Posey is a South Carolina resident, that she purchased and installed the subject shingles in South Carolina, and

---

[5] The court notes that these allegations also sufficiently meet Posey's obligation to plead allegations of GAF's purported knowledge of facts it failed to disclose in support of Posey's fraudulent concealment claim.

was exposed to the allegedly fraudulent statements in South Carolina; therefore, South Carolina substantive law applies to her claims in accordance with New Jersey's choice of law rules.

New Jersey utilizes the "most significant relationship" test as found in the Restatement (Second) of Conflict of Laws. *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445 (D.N.J. 2011).

> This analysis, which must be performed on an issue-by-issue basis, is a two-step process. The first step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies. Second, if a conflict does exist, the Court must determine which state has the most significant relationship to the claim, by weighing the factors set forth in the Restatement section corresponding to the plaintiff's cause of action.

*Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (internal citations and quotation marks omitted).

### A. Existence of Actual Conflict

To determine whether Posey may proceed with his cause of action under the NJCFA, this court must first evaluate whether there is a conflict between the consumer protection laws of South Carolina and New Jersey. This inquiry has been held to be a purely legal issue that requires no factual background. *See Montich*, 849 F. Supp. 2d at 445. Although neither party expressly addressed this threshold issue in their briefing, the court presumes that the parties intended to aver the existence of an actual conflict between the laws of the two jurisdictions concerning misleading advertising because in the absence of a conflict, New Jersey law would necessarily apply and it would have been unnecessary for the parties to address the significant relationship prong of the choice of law analysis.

The NJCFA, *see* N.J. Stat. § 56:8-1 *et seq.*, "is designed to address 'sharp practices and dealings . . . whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices.'" *Smajlaj v.*

15

*Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011) (quoting *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 271, 390 A.2d 566 (1978)).  Although similar in purpose, South Carolina's statutory consumer fraud claims based on deceptive trade practices may not proceed in a representative capacity. *See* S.C. Code Ann. § 39-5-140(a) ("Any person who suffers any ascertainable loss ... as a result of ... an unfair or deceptive method, act or practice declared unlawful by [the consumer fraud statute] may bring an action individually, but not in a representative capacity, to recover actual damages.").  Accordingly, there is an actual conflict between the laws of the two states.

### B.  Significant Relationship Test

To determine which jurisdiction has the most significant relationship to Posey's claims in this case, the court "must weigh the factors set forth in the Restatement section that corresponds to [Posey's] cause of action.  *See Montich*, 849 F. Supp. 2d at 445.   Where a plaintiff raises claims based on fraud and misrepresentation, Restatement Section 148 applies. *Id*.  It provides

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
>
> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
>> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>> (b) the place where the plaintiff received the representations,
>> (c) the place where the defendant made the representations,
>> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

16

> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Restatement (Second) of Conflict of Laws* § 148.  New Jersey courts also consider the general conflict of law principles found in Restatement Section 6 in analyzing the Section 148 factors, including "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states."  *P.V. v. Camp Jaycee*, 197 N.J. 132, 147, 962 A.2d 453 (2008) (citing to *Restatement (Second) of Conflict of Laws* § 6) (citations omitted).

Taking the allegations of the Amended Complaint as true, it is apparent that subsection (1) is inapplicable here as Posey alleges that GAF's advertising and marketing statements and representations were made or originated from GAF's headquarters in New Jersey but acknowledges that her exposure to the statements and representations was limited to her review of the shingle packaging in South Carolina.  Accordingly, the court will apply the factors specified in subsection (2) of Restatement Section 148.  Based on the allegations of the Amended Complaint, Posey allegedly became aware of and relied upon GAF's representations in South Carolina.  Additionally, the Amended Complaint alleges that the subject shingles were located in South Carolina at all relevant times of Posey's awareness and reliance on the representations.  Posey alleges that GAF made the representations from its headquarters in New Jersey.  Lastly, the contract performance obligation factor has no application here, and the remaining factors have neutral application because each party resides in their respective jurisdictions.   In sum, three of the six factors of Section 148 weigh in favor of applying South Carolina law.  Viewing this in consideration of the general conflict of law principles found in Restatement Section 6, the

court finds that South Carolina law is applicable to Posey's claims and she may not recover under the NJCFA. This finding is consistent with other courts' evaluation of similar claims. *See e.g., Montich*, 849 F. Supp. 2d at 449 ("A majority of courts in this District have held that the mere fact that a company is headquartered in New Jersey or 'that unlawful conduct emanated from New Jersey' will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship under Restatement § 148(2).") (collecting cases). Therefore, the court dismisses Posey's NJCFA cause of action against GAF with prejudice.

**Declaratory and Injunctive Relief**

Finally, GAF seeks dismissal of Posey's separate claims for a declaratory judgment and injunctive relief on the basis that Posey has only asserted alternative remedies and not independent causes of action.

A claim for a declaratory judgment or injunctive relief is actually a claim for an alternative remedy, not a separate and independent cause of action. *See Monster Daddy, LLC v. Monster Cable Prods., Inc.*, Nos. 6:10–1170–TMC and 6:11–1126–TMC, 2012 WL 2513466, at *1 n.3 (D.S.C. June 29, 2012); *Monster Daddy, LLC v. Monster Cable Prods., Inc.*, No. 10-1170, 2010 WL 4853661, at *6 (D.S.C. Nov. 23, 2011) (dismissing counterclaims for declaratory judgments because they did not state any independent claims which were not already before the court).

While Posey may request declaratory and injunctive relief as remedies where appropriate based on properly stated causes of action, the court must conclude that the Amended Complaint fails to state an independent basis for either declaratory or injunctive relief separate and apart from the other causes of action asserted in the Amended Complaint. Therefore, the court shall

consider Posey's claims for injunctive and declaratory relief as alternative and/or additional remedies for the causes of action already asserted but dismiss the claims as independent causes of action.

## CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** GAF Materials Corporation's Motion to Dismiss the First Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted [Dkt. No. 22] as set forth herein. The court dismisses Plaintiff Angela Posey's cause of action for violation of the New Jersey Consumer Fraud Act with prejudice. The court further dismisses the claims for negligence and negligent failure to instruct or warn; and declaratory and injunctive relief without prejudice. Plaintiff Angela Posey may amend her complaint to address the deficiencies noted by the court within thirty (30) days of the date of this order.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 27, 2013
Greenville, South Carolina